Hitchcock, J.
The amount in controversy in this case is not of much consequence, but the principle involved is one upon which there is groat contrariety of opinion, as well as many contradictory decisions. Under such circumstances, it is not to be expected that any determination wo can make will be satisfactory to all. It can hardly be entirely satisfactory to ourselves.
The true question presented is this, whether where one man undertakes to sell and deliver to another, property which is to be delivered in parcels, from time to time, within a specified period,— —payment to bo made on a day certain, subsequent to that period, and delivers but a part of the property, he can avoid his contract, that contract still subsisting, and recover against the vendee the value of that portion of the property which he has delivered, in an action of indebitatus assumpsit. Or, in other words, whether in case of'such a contract, the party who neglects and refuses to perform the contract on his part can, notwithstanding such neglect and refusal, recover from the other party to the extent that property has been delivered.
No such doctrine has as yet been recognized by this court as a sound principle of law, though it seems to have been acted upon by the court of common pleas, in the case under consideration. This court have always held that where there was an open subsisting contract for the performance of labor or the delivery of goods, if an action is brought, it must be upon the contract itself. If the oontract has been ^performed, then an action may be brought upon the contract, or an action of indebitatus assumpsit for the work and labor, or for goods sold and delivered, as the *203 case may be. So in a contract like the one now under consideration, if there were any matter which would evince that the vendee had waived full performance, or that the vendor had been prevented, by inevitable accident, from full performance, he might recover for the corn actually delivered. But this court has never gone so far as to say that where there is a special contract for the performance of labor, for the delivery of goods, or upon any other subject, the party violating and refusing fully to comply with his contract, can have an action at law in any form, to recover a pro rata compensation so far as he has performed. . It has seemed, and still seems to the court, that the establishment of such a principle would have a tendency to encourage the violation of contracts—to diminish, in the minds of contracting parties, a sense of the obligation which rests upon them to perform their agreements. Any principle which would have such an effect ought not to be recognized as sound law. It is the duty of courts to enforce the performance of contracts—not to encourage their violation.
The same principle as to the form of action, where there is a subsisting special contract, seems to be entertained in the Supreme Coui’t of the United States. In the case of Chesapeake and Ohio Canal Company v. Knapp and others, 9 Peters, 565, that court say, “there can be no doubt, that where the special contract remains open, the plaintiff’s remedy is upon the contract, and he must set it forth specially in his declaration ; but if the contract has been put an end to, the action for money had and received lies to recover any payment that has boon made under it.”
I know that action of assumpsit is said to be an equitable action, According to Lord Mansfield, an action of indebitatus assumpsit is as broad as a bill in equity. But it seems to me that it would be a strange reason for the interference of a court of equity, that a complainant had ^neglected or refused to perform a contract in respect to which he seeks some kind of relief. • Courts of equity will grant relief in cases of fraud, accident, or mistake, but never, I apprehend, where the culpable negligence of a complainant is relied upon for relief. Especially where the only apparent excuse for such negligence is, that the complainant did not do what he had agreed to do, merely because he did not choose to do it. And still this is precisely the hypothetical case before the *204 court. The court of common picas held that in such a case the negligent party might have relief in a court of law.
We are aware that there are authorities which sustain the ruling of the court of common pleas; and perhaps a majority of the modern cases go to sustain the ruling of that court. These cases are referred to by the counsel of the defendant in error. The leading one is the case of Oxendoll v. Witheral, 17 Eng. Com. L. 401. The principle advanced in that case has been adopted by the courts of Pennsylvania, Massachusetts, and New Hampshire—and perhaps by the courts of some of the other states in the Union. But the case of Oxendoll v. Witheral has been expressly overruled in the State of New York, both by the Supreme Court and the Court of Errors. In the case of Champlin v. Rowley, 18 Wend., the chancellor, in speaking of this case, says, “this decision, carried to the extent it was in that case, can not be considered as good law anywhere, for it is not founded upon equitable principle, but is contrary not only to justice, but to common sense. The only way I can account for it is upon the supposition that the facts of the case are not properly stated in the report; or that the injustice of requiring the party, who was not in fault, to be at the expense of returning bulky articles of this description, or even of seeking him for the purpose of making an offer to return them, to protect himself from an action, was not presented for the consideration of the court. Again, in that case, as in this, the contract was not to deliver the whole quantity at one time, but to deliver the whole within a ^specified period. Neither was there any agreement, either express or implied, that the defendant should not be permitted to sell or use the several parcels, delivered from time to time, until the last period for completing the coutract had actually expired.”
In the case now -before this court, the contract assumed by th& plaintiff in error (whether the assumption was correct was a-question for the jury) was that the defendant in error agreed to deliver to the plaintiff the one-half of the corn which had been grown on a certain parcel of ground, the delivery to be made during the fall of 1843. and the ensuing winter, for which the plaintiff was to pay, on the 1st day of March next ensuing, at the rate of fifteen cents per bushel. The contract is still open and subsisting. Thereby the delivery of the corn—of the entire crop— was a condition precedent. Had the contract been such that the *205 whole quantity was to be delivered at one and the same time, a delivery of a part at the time, and the acceptance of that part by the vendee, might have been construed as a waiver of the delivery of the entire quantity. But it was not so. By the contract the corn was to be delivered during the fall and winter,—to bo delivered in different parcels and at different times, and it was to be so received.
The court of common pleas seem to have based the right of the defendant in error to recover upon the fact that there had been no offer on the part of the plaintiff in error to return that portion of the corn delivered; and this is the doctrine established in the case of Oxendoll v. Witheral. But would it have been reason-
able, under the terms of this contract, to require of the vendee to keep on hand the portion of the corn delivered until it should be ascertained whether the vendor would comply with his contract by the delivery of the remainder ? Such could never have been the intention of the parties. " Such is not the meaning of the contract. It must have been understood that the corn delivered, upon the delivery, became the property of the vendee to be used or disposed of as he might think proper.
*The court directed the jury#that if the vendee had sustained damage, by the non-delivery of the corn, the amount of that damage might be deducted from the value of the part delivered. Assuming the previous instructions to have been proper, there would be no very strong objection to this part of the charge. It is only extending the principle of set-off beyond what is authorized by the statute. It is only permitting unliquidated damages to be set off against a liquidated demand, a thing which has never been allowed in this court. And in order to do justice it would be necessary to go further, and permit tho defendant to recover a balance, provided the damages sustained should exceed the value of the property delivered. To do this would be to introduce an additional new feature in our judicial pi’oceedings.
The principle adopted by the court of common pleas is admitted to bo of modern invention. It has never been recognized in this court. It may operate well, but we incline to the opinion that it will be found to be mischievous in its operation and consequences. We are not as yet prepared to adopt it. In our opinion the court of common pleas erred in the instructions given to the *206 jury, and in refusing to instruct as requested by the plaintiff in error.
The judgment of the court of common pleas is reversed, and the cause is remanded for further proceedings.